Good morning, your honor. I'm Ronald Bonaparte for Mr. Appel, the petitioner. You'll have to excuse me. I work with hearing aids. And the clerk of the court was kind enough to give me advice. Hopefully that I could hear you. Mr. Bonaparte, if you have any problems, just let us know. OK, fine. Thank you. The real question in this case, I think, was outlined by the letter that the Attorney General wrote in response to your last order, June 27, 2005, when it said whether a 212C relief was available to the petitioner because he was convicted by a jury. Now, the point that I have raised, completely outside of everything else that has been going on, is whether or not the Attorney General has the right to confine 212C from St. Cyr to plea bargains only when IIIRA defined conviction as encompassing both jury trials, court trials, and plea bargains. Mr. Bonaparte, what do we do with the language in St. Cyr itself which pointed to just this situation and said it's OK for Congress to do this? What St. Cyr did was reply itself only to a plea bargain. But there was variable language, and it based itself on Landgraf. And Landgraf based itself on Chu Hong, those two Supreme Court cases, which were roadmap cases. They were not quid pro quo. Well, assuming we agree with you, what do we do with our Ninth Circuit case? Well, the Ninth Circuit case did not go into the definition of conviction as set out in Section 322 and in 101A48 of the Immigration Act. The Attorney General made its own regulations on St. Cyr. And the regulations on St. Cyr, which I quoted in my reply brief and which I have here, defined what the Attorney General was going to do on St. Cyr cases. It said we defined conviction only to encompass plea bargains. But the crucial thing and the reason I brought this language of these two cases, which I submitted yesterday, which I found out two weeks ago from the BIA, the Attorney General changed his position and said as far as it was concerned, all convictions were to be defined under Section 322 of IIIRA and as codified in 101A48. Now, the issue comes, the Attorney General is sitting on a knife. Either convictions encompass what IIRIA said in October 1996 legislation and was codified in Section 101A48, or they don't. You cannot put regulations in here defining the way they're going to interpret St. Cyr and say that convictions can be divided in half. And that's what they've done. And that's their position. And that's the way you get around prior legislation, prior cases. But that still doesn't help me with trying to distinguish the basis in St. Cyr for recognizing a distinction between the creation of a new disability on those people who may have entered into a plea agreement with an expectation that they would be eligible for relief and those who decided to run the gauntlet and take their chance with, and the Supreme Court said they're in a different position because they can't point to an expectation that they would have had. That's true in the factual situation, but St. Cyr relied upon Landgraf. Landgraf was a roadmap case. But Landgraf tells us that where the intent of Congress is clear, that's the end of the retroactivity inquiry. Congress has the power, if it chooses to exercise it, so long as it declares that that is expressly what it is doing. And the problem in St. Cyr was it wasn't clear that Congress had intended a retroactive effect on people who had pled guilty before the law changed. It wasn't clear in that factual situation, but St. Cyr depended upon Landgraf. Landgraf was a situation where it was a roadmap, and in effect, if you take a look at Landgraf, the only immigration case it cited was Shu Hong versus INS. Mr. Bonaparte, you and I are not communicating on the same plane here. The question I'm really posing to you is one of congressional power under the Constitution. As I read St. Cyr, what the Supreme Court reminded us is that Congress has the power to make legislation retroactive under the Constitution, even if it has consequences that you might declare and I might believe to be unfair, as long as the Congress makes it expressly clear that that's what it intends to do. And in this situation where it is very clear that that is what Congress intended, why isn't there a distinction between people who pled guilty, as St. Cyr addressed, and those who went a different route? Because Congress intended in passing the October legislation in section 322 of IIRA that convictions would encompass court trials, jury trials, plea bargains. That's the actual wording of the section that was encompassed in 101A, section 101A48 of the Act. That was clear legislative intent. And how now can we get around that? That was clear. Absolutely clear. Mr. Bonaparte, what do we have to decide in order for you to prevail, so far as you're concerned? What you have to decide is this, that when the Attorney General made its regulations defining St. Cyr, it had to, in effect, encompass 322 of the Act, which it also encompassed in this case which I submitted yesterday, the BIA, which went into the whole history of section 322. That, in effect, the regulations that were issued, as I cited, is 8 CFR 1022, I think it is in my hand, defining how the Attorney General is going to define St. Cyr. I thought I was helping you get to a bottom line, but I guess I wasn't. I think what you want us to decide is that Congress intended to exempt your client's situation when it clearly intended that the legislation be retroactive, and we'd have to find some basis, and we don't see it in the record, and you might be able to point it out. All right. If what was in my brief, and this is sort of evolving, but the point is, how can you define conviction as to only encompass plea bargains when there is a clear statement? You may want to save, you've got a minute or so, you may want to save it for rebuttal. I think we know what's in your brief, so if that's what you're relying on, yeah, I understand it.  Thank you, Your Honor. Thank you, Mr. Guzman. May it please the Court. Assistant United States Attorney Frank Travieso on behalf of Appalese. As Justice Nelson pointed out, in Armendariz Montoya, this Court concluded that the amendments to Section 212C by AEDPA were not impermissibly retroactive in the case of an alien convicted of an aggravated felony following a jury trial. As you know, there are several circuits that disagree with that case, and aside from that case is, what is your authority for the proposition that to establish impermissible retroactivity by appell, he must show that he entered into a kind of quid pro quo for St. Cyr? For instance, he may well have decided to go to jury trial knowing that if he failed, he could apply for 212C relief, very similar to the person who enters into a plea bargain. Are you relying, then, simply on our Ninth Circuit case, which we must follow? The real question is whether, with a circuit split and a number of the circuits going against that case, whether this is a case the Court should consider en banc. Well, Your Honor, in fact, I know that I believe it was the Second Circuit in Restrepo spoke to that issue. I believe the facts of Restrepo were very different than what happened here. If the Court looks at the record, which I'm sure it has, it is clear that in this particular case, Mr. Appell faced a possible sentence of 30 years. He had three counts, each facing 10 years. The record does not contain any evidence to establish that a plea bargain was offered, giving him less than a five-year sentence. And, in fact, what the Court did give him following the jury trial was an eight-year sentence. It is very possible that Mr. Appell wouldn't have been eligible for 212C relief, even if it remained after September 30, 1996, because it appears that he may have served more than five years. It is not clear in the record. I see. Thank you. Your Honors, I will keep this brief. I believe that Armendariz Montoya is dispositive of this case. It is controlling. There is no reason to sway from Armendariz Montoya in this particular case. And unless the Court has any particular questions, I would submit. Well, I do have another question, and it deals with the same case. Now, as I read Supreme Court precedents, it doesn't require Appell to establish reliance on prior law to show a rhetorical fact. Armendariz seems to require that. Can you point to any Supreme Court precedent that would require that reliance? Well, I believe that St. Cyr speaks quite extensively about reliance, the quid pro quo of the plea agreement, of the fact that once a defendant enters into a plea agreement, the government gets a benefit. It certainly talked about plea agreements. But St. Cyr, as I read it, and maybe I read it incorrectly, didn't talk about cases where that question was not answered in St. Cyr, as far as I can read, about going to jury trial, relying, with possible reliance on the fact, well, if I lose, I can still apply for 212C relief. Now, I'm not saying that they will get 212C relief. What is interesting, in the footnote in St. Cyr, it shows that over 50% of the cases, 212C relief is granted. So that whether you have to show actual reliance on that fact or whether if you go to jury trial, you still can rely on the fact that you can apply for 212C. I guess what you see I'm doing here, we do have the Ninth Circuit case, and I do agree with you that it applies in this case. By trying to understand the reasoning there, and I don't see it in St. Cyr, please correctly show me where I might find it. I don't know if I can correct you, Your Honor, but I would like to point out that St. Cyr talks quite extensively about taking away vested rights, about the quid pro quo. And in fact, I'd like to point page 323. St. Cyr talks about one of the St. Cyr petitioners, indicating that why he pled was because he wanted to ensure that he got less than five years to avoid what would have been a statutory bar on 212C relief. Well, I absolutely agree with you. St. Cyr involved a quid pro quo. Now I'm talking about reliance on 212C relief, and which is there's no quid pro quo here. He went to jury trial. But query whether on a St. Cyr you're prohibited from relying on 212C relief and whether there has to be actual proven reliance, i.e. I knew about it, that's why I went to jury trial anyway, but I was counting on 212C relief, or the fact that it is possible to get it even if you go to jury trial. I don't think it is possible, Your Honor. I think that St. Cyr clearly stated that it was that notion of quid pro quo that takes this out of the presumption of retroactivity. Well, certainly in a plea bargain case, that's true. Correct. And I'm wondering whether there's no quid pro quo, whether there's simple reliance on the fact of 212C relief. But please go ahead. I used up enough of your time. No, thank you. Well, don't go away. Okay. I figured you were loading up. A couple of follow-up questions by me. Do you happen to know, with regard to the practice in granting 212C relief, whether there was a better chance of getting relief if the petitioner had pled guilty as opposed to being convicted prior to applying? Well, Your Honor, in the immigration court context, the immigration judge analyzes a series of factors to determine, back when 212C was available, whether 212C would be granted. Among those factors were the seriousness of the offense, the rehabilitation, the other equitable factors that the alien had in his or her favor. Surely, if an alien had been convicted by jury trial versus taking a plea, that, I believe, was a consideration. It was something that would have been weighed and balanced in its totality, determined whether or not 212C relief would be granted. But it would not be conclusive, the fact that he'd gone to trial? No. Okay. Thank you. All right. We've probably pursued that as far as we can. Anybody have any further questions? Thank you. Thank you. Mr. Motorpark, we've got a minute left. Your Honor, what we have here, you know, the question is, what's going to happen if this case is reopened? What we tried to do before the immigration judge was to bring in a 212C application because we have a man who has been a permanent resident for about 20 years before he sinned and got himself in trouble, U.S. citizen wife, two U.S. citizen children, a business employing over 100 people with assets over a million dollars. Now, we don't know what would have happened had the 212C application actually been adjudicated. The court denied it as a matter of law because of Soriano. We appealed and brought in every case we could that was present at that time and lost. We came before this court months before in order to go back and file a petition for rid of habeas corpus. The only thing I'm saying is this. I am asking this court to give Mr. Appell administrative due process, which I believe he had. Well, we can't grant that. The only thing we could do, as I understand it, under Ventura would be to remand it to the BIA with directions to reopen. Is that right? We can't order them to exercise their discretion in one way or the other. I understand that. But that at least would give us some hope that we could refile the application. And if the government has defenses, they could throw it in. But, you know, I've depended on the record that was filed before the administrative appeals bodies, the trial court, the BIA. I don't want to, you know, and what I have to argue, if the case is remanded, I will argue it. But I'm asking for a chance to argue it. That's the only thing I'm asking. And I and I keep coming back to the same thing. You know, we've got the Second Circuit cases that disagree with you, which I've thrown in. We've got, you know, the real issue is what happened in St. Cyr, whether they excluded it. And I just keep coming back to the road map over and over again. And with that, I'll rest. All right. Thank you, Mr. Bonaparte. I think we understand your position. The case just argued is submitted. And we will move on to the case of Pedro.
judges: Farris, D.W. Nelson, Tallman